UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREA L. T.,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

Case No. 2:25-cv-10585
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10), DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12), and REMAND THIS MATTER TO THE COMMISSIONER FOR ACTION CONSISTENT WITH THIS REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion for

summary judgment (ECF No. 10), **DENY IN PART** Defendant's motion for

summary judgment (ECF No. 12), and **REMAND** this matter to the Commissioner

for action consistent with this report and recommendation.

**II.    REPORT**

Plaintiff, Andrea L. T. (ALT), brings this action under 42 U.S.C. §§ 405(g)

and 1383(c)(3) for review of a final decision of the Commissioner of Social

Security ("Commissioner").  This matter is before the United States Magistrate

Judge for a Report and Recommendation on Plaintiff's motion for summary

judgment (ECF No. 10), the Commissioner's cross motion for summary judgment

(ECF No. 12), Plaintiff's reply (ECF No. 13), and the administrative record (ECF

No. 5).

### A.      Background

In 2022, ALT filed applications for Title II Disability Insurance Benefits

(DIB) and Title XVI Supplemental Security Income (SSI), alleging disability since

September 30, 2021, when ALT was 57 years old, *i.e.*, a "person of advanced age,"

20 C.F.R. §§ 404.1563(e), 416.963(e).  (ECF No. 5, PageID.275-276; *see also id.*,

PageID.272-274.)  Plaintiff's applications were denied initially on October 18,

2022 and upon reconsideration on February 27, 2023.  (*Id.*, PageID.81-140, 146-

160, 163-170.)

Plaintiff sought a *de novo* hearing before an administrative law judge

("ALJ").  (*Id.*, PageID.269-271.)  ALJ Lauren Burstein held a hearing on August

24, 2023.  (*Id.*, PageID.57-80.)  On January 22, 2024 – one day shy of Plaintiff's

60th birthday (*see id.*, PageID.50, 275) – ALJ Burstein issued an unfavorable

decision.  (*Id.*, PageID.34-56.)  At **Step 1** of the sequential evaluation process,[1] the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's
review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered the sequential review considers and answers five questions:

ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA")

since September 30, 2021, the alleged onset date (AOD).  (ECF No. 5, PageID.39-

40.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:

hypertension, substance abuse (alcohol and marijuana), sinus bradycardia, status-

post aortic thoracic dissection, alcoholic cirrhosis of the liver, gastroesophageal

reflux disorder (GERD), lumbar disc narrowing, and cervical spine impairment.

(*Id*., PageID.40-42.)  At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.  (*Id*., PageID.42-43.)  Between **Step 3**

and **Step 4**, the ALJ found that Plaintiff had the residual functional capacity

(RFC):

> . . . to perform light work [*i.e., exertional limitations*] . . . except she
> can never crawl or climb ladders, ropes, or scaffolds.  She cannot

---

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  *See also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

balance as described in the Selected Characteristics of Occupations (SCO).  She can occasionally climb ramps and stairs, stoop, kneel, and crouch [*i.e., postural limitations*].  She must avoid unprotected heights and operating hazardous machinery [*i.e., environmental limitations*].

(*Id*., PageID.43-49.)  At **Step 4**, the ALJ found that Plaintiff was capable of performing past relevant work as a Merchandise Manager (DOT 185.167-034, SVP 7, skilled) and noted that such work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (*Id*., PageID.49.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 30, 2021 (*i.e.*, the AOD), through the date of the decision.  (*Id*., PageID.49-50.)

Plaintiff sought review of the hearing decision.  (*Id*., PageID.269-271.)  On January 17, 2025, the Appeals Council denied Plaintiff's request for review.  (*Id*., PageID.23-28.)  Thus, ALJ Burstein's decision became the Commissioner's final decision.  Plaintiff timely filed the instant lawsuit on March 3, 2025.

### B.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

4

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### C.   Analysis

#### 1.   Opinion evidence

Plaintiff's first statement of error concerns the ALJ's treatment of the opinion evidence, namely the finding that primary care physician (PCP) Martha A. Pollock, M.D.'s June 22, 2023 opinion (*id*., PageID.791-794; *see also id*., PageID.941-944) is "minimally persuasive" (*id*., PageID.48). (ECF No. 12, PageID.1123-1128.)

#### a.   Compliance with 20 C.F.R. §§ 404.1520c, 416.920c

By way of background, Dr. Pollock treated Plaintiff from at least July 1, 2020 to October 5, 2023. (ECF No. 5, PageID.487-503, 852-868.) ALJ Burstein,

when reviewing the medical records, cited records from Plaintiff's "treating physician" (*see id.*, PageID.40, 41 (*citing id.*, PageID.437, 858-859, 875, 890, 903, 905, 915, 917)) and acknowledged Dr. Pollock as Plaintiff's PCP (*id.*, PageID.46 (*citing id.*, PageID.926, 929).  Therefore, the ALJ considered the "relationship with the claimant" factor, *see* 20 C.F.R. § 404.1520c(c)(3), 416.920c(c)(3), and perhaps also the "specialization" factor, *see* 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4).

In this appeal, Plaintiff argues that the ALJ "failed to provide an adequate explanation of how either the factor of supportability or the factor of consistency led her to find the opinion of Dr. Pollock unpersuasive."  (ECF No. 10, PageID.1127.)  Indeed, "[t]he factors of supportability . . . and consistency . . . are the most important factors [the SSA considers when determining] how persuasive [it finds] a medical source's medical opinions or prior administrative medical findings to be."  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

###  i.      Supportability

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  To the extent Plaintiff argues that the ALJ did not properly consider supportability, *see* 20 C.F.R. §§ 404.1520c(c)(1),

7

416.920c(c)(1), her argument is underdeveloped.  The Court expects such an argument to be accompanied by citations to Dr. Pollock's treatment notes that support her assessments.  Plaintiff's related argument contains none.  (*See* ECF No. 10, PageID.1125, 1127.)  By comparison, albeit in a long string cite, the ALJ concludes her assessment of Dr. Pollock's June 2023 opinion with citations to various records of treatment with Dr. Pollock dated December 2022 through October 2023.  (*See* ECF No. 5, PageID.48 (citing *id.*, PageID.858, 890, 928, 1000, 1018)).

## ii.      Consistency

Plaintiff contends that the "less-than-sedentary" limitations assessed by Dr. Pollock are similar to (or consistent with):  (1) CE Jinit Shah, NP-C's August 2022 internal medicine evaluation report (*see* ECF No. 5, PageID.628-631), which – although it did not quantify limitations – sets forth a narrative confirming multiple impairments (*see id.*, PageID.631); (2) CE John J. Jeter, MA, LLP / Hugh Bray, PhD, LP's August 2022 psychological CE report, which reflects that Plaintiff had "severe impairment" in terms of her "physical ability to carry out a work schedule[,]" (*id.*, PageID.637); and, (3) state agency medical consultant Reuben Henderson, D.O.'s February 2023 opinion that Plaintiff's exertional limitations included occasionally lifting and/or carrying 10 pounds (*id.*, PageID.115, 133), *i.e.*, sedentary (*id.*, PageID.120, 138).  (ECF No. 10, PageID.1125-1126.)  Still, the

Commissioner convincingly notes that an ALJ "need not compare opinions against each other[,]" citing, *inter alia*, *Terhune v. Dudek*, No. 3:23-CV-00076-GFVT, 2025 WL 876804, at *4 (E.D. Ky. Mar. 20, 2025) ("The ALJ did not err by failing to state explicitly that Dye-Love's opinion bore similarities to those of Gilbert and Ibisate."). (ECF No. 12, PageID.1143-1144.)

"The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ in Plaintiff's case found the psychological CE's opinion on Plaintiff's physical ability "unpersuasive," in part because it was "inconsistent with the consultative medical examiner's findings of normal strength, range of motion, sensation, and reflexes despite having knee and back pain[,]" (*id*., PageID.40-41), and, in finding Dr. Henderson's opinion "partially persuasive," the ALJ noted that the "limitation to reduced light exertion is consistent with the claimant's spinal degeneration and residual pain, fatigue from alcohol liver cirrhosis and substance abuse, and alleged dizziness and headache secondary to left carotid aneurysm[,]" (*id*., PageID.47). As the Commissioner accurately notes, Plaintiff has not challenged the ALJ's treatment of Jeter / Bray's or Henderson's opinions. (ECF No. 12, PageID.1144-1145.)

9

### b.   The ALJ's characterization of Plaintiff's physical examinations

Plaintiff additionally challenges the ALJ's characterization of Plaintiff's physical examinations as "show[ing] no abnormalities other than limited range of motion of the neck." (ECF No. 10, PageID.1124, 1125.) Dr. Pollock opined that Plaintiff could stand/walk for 2 hours in an 8-hour workday, could never kneel or crouch, and could only occasionally use her bilateral upper extremities. (*See id.*, PageID.792-794 ¶¶ 6, 7, 8.) Relatedly, the ALJ stated:

> I find the standing, walking, kneeling, crouching, and manipulative limitations are *inconsistent* with the claimant's physical examinations, which show some limited neck range of motion with tenderness but otherwise normal gait, posture, strength, reflexes, and range of motion in her extremities. Such findings, coupled with the claimant's admitted independence with activities of daily living, *support* limiting her to light exertion with occasional stooping, kneeling, crouching, and climbing ramps and stairs.

(*Id.*, PageID.48 (emphases added).) The ALJ also stated that Plaintiff's "cervical and lumbar degeneration, history of left thoracic aneurysm, headaches, dizziness, and fatigue secondary to alcoholic liver cirrhosis" *supports* "limiting her to light exertion with no crawling, balancing, or climbing ladders, ropes, or scaffolds …." (*Id.*, PageID.48.)

The ALJ made this assessment, having previously observed that the August 2022 consultative medical examination revealed "lumbar disc space narrowing at the L4-L5 and L5-S1 levels" and "full range of motion in her spine and all

10

extremities." (ECF No. 5, PageID.45.) (*See also id.*, PageID.618-620, 632.)

Moreover, while the August 2022 muscle examination and range of motion forms

suggest she uses a cane because her gait and station is unsteady due to knee pain

(*see id.*, PageID.617, 620), the ALJ cited a left knee x-ray that was negative (*see*

*id.*, PageID.640 [October 2022]). (*Id.*, PageID.45.) Additionally, the ALJ had also

noted, *inter alia*:

- A "January 2023 head and neck CTA showed fusiform dilatation of the left internal carotid artery (LICA) and normal right carotid artery system[,]" (*see* ECF No. 5, PageID.808; *see also id.*, PageID.783, 786);

- The January 2023 neurological examination, where Plaintiff reported decreased range of motion associated with neck pain and headaches (*see id.*, PageID.786);

- The vascular surgeon's (Kyle Markel, M.D.'s) February 2023 notes, which state that Plaintiff "does not require surgical intervention of her carotid or iliac aneurysms . . . [,]" and "[f]rom a vascular standpoint, . . . does not have restrictions to going back to work or exercising . . . [,]" (*see id.*, PageID.808); and,

- The May 2023 neurological examination, where Plaintiff reported decreased range of motion associated with neck pain and headaches (*see id.*, PageID.783), examination revealed "reduction in range of motion present" in the neck (*see id.*, PageID.784), but exhibited, in the ALJ's words, "normal gait, posture, reflexes, and motor function as well as full range of motion in her extremities[,]" (*see id.*, PageID.784-785).

(ECF No. 5, PageID.46.)

Plaintiff contends the ALJ's rationale "mischaracterizes the evidence by asserting that the examinations showed no abnormalities other than limited range of motion of the neck[,]" and "offers nothing other than the suggestions that examinations of the Plaintiff were devoid of abnormal findings other than limited range of motion of the neck . . . ." (ECF No. 10, PageID.1124, 1125.)  However, as the Commissioner correctly points out, these statements are not accompanied by "evidence to support her argument . . . ." (ECF No. 12, PageID.1140, 1143.)  The Commissioner may also be correct that Plaintiff "fails to demonstrate that the ALJ inaccurately concluded that her gait, posture, strength, reflexes, extremity range of motion, motivation, attention, focus, comprehension, insight, judgment, and task completion were normal . . . ." (ECF No. 12, PageID.1143 (citing ECF No. 5, PageID.48).)

Even so, the Undersigned's review of the above-mentioned evidence regarding the May 2023 neurological examination and the ALJ's description thereof has revealed a disconcerting inaccuracy as to range of motion in the extremities.  While the May 2023 motor examination was normal, including the axial motor exam, which revealed "full range of motion present . . . [,]" (*id*., 784-785), the ALJ's support for her statement that the May 2023 neurological examination indicated "full range of motion in her extremities" (*id*., PageID.46) is unclear.  Instead, this appears to be a misplaced reference to the August 2022

12

medical CE (*see id.*, PageID.618-620), which the ALJ discussed on a prior page of her report (*see id.*, PageID.45).

This inaccuracy within the ALJ's review of the medical evidence of record (MER) should not be ignored. It is clear that the ALJ's express references to normal or full range of motion are based on the August 2022 consultative medical examination (*see id.*, PageID.41, 45, 618-620) and a seemingly mistaken interpretation of the May 2023 neurological motor examination's range of motion findings (*see id.*, PageID.46, 783-785) as related to Plaintiff's *extremities*. Where, as here, the ALJ discounts Dr. Pollock's June 2023 opinions regarding "standing, walking, kneeling, crouching, and manipulative limitations" as "inconsistent with the claimant's physical examinations" showing, *inter alia*, "normal . . . range of motion in her extremities[,]" (*id.*, PageID.48), the Undersigned questions the ALJ's support for this statement, especially where the apparently mistakenly interpreted medical record is dated the month prior to the discounted opinion. This constitutes harmful error.

c. **The ALJ's manner of discounting Dr. Pollock's off-task, absenteeism, and concentration limitations**

Plaintiff also challenges the manner in which the ALJ addressed Dr. Pollock's off-task and side effects opinions. (ECF No. 10, PageID.1124, 1125.) As to "non-exertional limitations," Dr. Pollock assessed Plaintiff as likely to be "off-task" more than 25% of a typical workday, able to maintain attention and

13

concentration for less than 30 minutes before requiring a break, and likely to be absent from work more than 4 days per month as a result of her medical impairments and/or treatment. (ECF No. 5, PageID.791-792 ¶ 4(a)-(c).) Dr. Pollock attributed these limitations to medication side effects, fatigue, and the effects of pain. (*Id.*, ¶ 4(d).) Relatedly, the ALJ stated:

> Dr. Pollock's off-task, absenteeism, and concentration limitations are *inconsistent* and *unsupported* by the claimant's display of normal motivation, attention, focus, comprehension, insight, judgment, and task completion. Dr. Pollock also failed to identify the claimant's medication side effects or describe the effects of her pain.

(*Id.*, PageID.48 (emphases added).) The ALJ made this assessment, having previously acknowledged Plaintiff's allegation that she has "difficulty concentrating and completing tasks[,]" citing hearing testimony, and having previously stated, "the record demonstrates the claimant's ability to maintain appropriate alertness, attention, and concentration, communicate appropriately, recall information, and complete simple tasks, all of which indicates she is not limited in this area[,]" citing multiple pieces of MER. (ECF No. 5, PageID.42.)

Plaintiff takes issue with the fact that the ALJ's "off-task restrictions are compared to mental status findings[,]" while Dr. Pollock's limitations are "based . . . on physical impairments." (ECF No. 10, PageID.1124.) Although the Commissioner correctly notes that "[t]he mental findings cited by the ALJ . . . were relevant to the limitations Dr. Pollock imposed[,]" (ECF No. 12, PageID.1140-

14

1141), this contention misses Plaintiff's point that Dr. Pollock's limitations were based on physical impairments, *i.e.*, "side effects of medications," "fatigue," and "effects of pain." (ECF No. 5, PageID.792 ¶ 4(d).) In other words, the ALJ discounted Dr. Pollock's off-task, absenteeism, and concentration limitations, but not on the bases for which they were assessed.

Nonetheless, the ALJ also discounted Dr. Pollock's asserted bases for these limitations. Plaintiff takes issue with ALJ's statement that Dr. Pollock "failed to identify . . . medication side effects . . . ," because "Dr. Pollock clarified that time off-task and absenteeism would be attributable in part to side effects from medications." (ECF No. 10, PageID.1124; *see also id*., PageID.1125.) However, as the Commissioner correctly notes, Dr. Pollock did not identify what medication side effects Plaintiff experienced, nor did Dr. Pollock identify the effects of pain (*see* ECF No. 5, PageID.792 ¶ 4(d)). (ECF No 12, PageID.1141-1142.) This "was "an appropriate supportability analysis, as the ALJ was considering the level of explanation that was provided in the opinion." (*Id*., PageID.1142-1143.) *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s)

15

will be.").  Put another way, the ALJ's "assertion that Dr. Pollock failed to identify side effects of medications" is not "inaccurate."  (ECF No. 10, PageID.1125.)[2]

### d.      Accuracy of the ALJ's pulmonary function (PFT) description

Finally, Plaintiff contends the ALJ's description of the PFT testing is inaccurate.  (ECF No. 10, PageID.1124.)  As to "environmental limitations," Dr. Pollock assessed Plaintiff as limited to occasional exposure to "dust / odors / fumes / pulmonary irritants," "extreme cold," "extreme heat," and "operating a vehicle." (ECF No. 5, PageID.794 ¶ 9.)  Relatedly, the ALJ stated:

> Dr. Pollock's limitation to occasional exposure to temperature extremes and pulmonary irritants is *inconsistent* with the claimant's PFT findings, general display of clear lungs, and denial of inhaler or nebulizer use.  It is also *unsupported* by the claimant's subsequent denial of dyspnea on exertion or treatment for COPD.

(*Id.*, PageID.48 (emphases added).)  The ALJ made this assessment, having previously addressed the August 2022 consultative medical examination, noting, *inter alia*, that:  (1) Plaintiff reported having dyspnea and a history of COPD but denied using an inhaler or nebulizer (*see id.*, PageID.628, 631); and, (2) Plaintiff's "pulmonary function test (PFT) revealed only mild restriction and mild obstruction following bronchodilator and she exhibited clear lungs with no coughing,

---

[2] Incidentally, in her November 1, 2022 disability report on appeal, Plaintiff listed six medications and the reason she took them, but, in the space labeled "side effects you have," she listed "N/A" for each one.  (*See* ECF No. 5, PageID.323 ¶ 6.)

wheezing, clubbing, cyanosis, or hyperinflation during her examination." (*Id.*, PageID.45.)  Also, it appears that, on or about July 3, 2023, Plaintiff "denie[d] any dyspnea with exertion or any treatment for COPD," stating it is "light COPD" (*id.*, PageID.800), and the ALJ acknowledged this denial in the written decision.  (*See id.*, PageID.46.)

Plaintiff contends the "the testing documented moderate restrictive and . . . mild obstructive pulmonary impairment," "the implication that the test results were normal is clearly inaccurate[,]" and it is false that "the PFT findings suggested no need for avoidance of respiratory irritants."  (ECF No. 10, PageID.1124-1125.) While the Court notes CE Shah's August 22, 2022 respiratory exam seems to have been normal (*see* ECF No. 5, PageID.629), Plaintiff seems to rely on CE Shah's August 2022 pulmonary function report (*id.*, PageID.621) and the attached "STD FVC/FVL" single page reports, of which the pre-1, pre-2, pre-3, and post-1 reports reflect "reduced FVC and FEV1 indicates moderate restriction and mild obstruction[,]" (*see id.*, PageID.622-625), the post-2 report reflects "reduced FVC indicates mild restriction," (*id.*, PageID.626), and the post-3 report reflects "reduced FVC and FEV1 indicates mild restriction and mild obstruction[,]" (*id.*, PageID.627).  (*See* ECF No. 10, PageID.1118-1119.)

Thus, Plaintiff has shown that the "ALJ's description of the [PFT] is inaccurate."  (ECF No. 10, PageID.1124.)  This is not rendered harmless by the

17

RFC's limitation that Plaintiff "must avoid unprotected heights and operating hazardous machinery."  (ECF No. 5, PageID.43.)  While the Commissioner notes that the ALJ relied on testing results *in combination with* other observations (*see* ECF No. 12, PageID.1141-1142), the Undersigned is not willing to speculate about what part the inaccurately characterized results played in the ALJ's decision on environmental limitations.

Considering the inaccurate PFT description within the ALJ's review of the MER (*see* ECF No. 5, PageID.45) was then used to discount state agency medical consultant Henderson's opinion (*see id*., PageID.47, 116, 134) <u>and</u> Dr. Pollock's opinions (*see id*., PageID.48, 794 ¶ 9), the ALJ should revisit the treatment of these opinions on remand.  (*See also* ECF No. 10, PageID.1126.)

### 2.     The ALJ's Step 4 determination

In her second statement of error, Plaintiff argues that the ALJ's Step 4 conclusion that she "is capable of performing past relevant work," (*see* ECF No. 5, PageID.49), "is based on a return to the job of merchandise manager, which is not a job that Plaintiff ever performed."  (ECF No. 10, PageID.1128-1129; *see also id*., PageID.1117; ECF No. 13, PageID.1153.)  Within this argument, Plaintiff relies upon:  (i) her April 7, 2022 disability report, where her job history lists February 2015 to September 2021 work as a supervisor / coordinator / retail in a department store (*see id*., PageID.305-306); (ii) the related February 2023 vocational factor

assessment that Plaintiff's past work as a "lead retail worker" was that of a sales clerk (290.477-014), which has a "light" exertional level (*see id.*, PageID.137); (iii) application of medical-vocational rules as to other work lists three occupations but no information about the number of jobs, other than "significant" (*see id.*, PageID.138); and, (iv) hearing testimony (*see id.*, PageID.77-78).  On the other hand, the Commissioner contends the ALJ's Step 4 determination is supported by substantial evidence, pointing to the job history in Plaintiff's disability report (ECF No. 5, PageID.305) and administrative hearing testimony (*id.*, PageID.70, 72, 77). (ECF No. 12, PageID.1146-1149.)

However, if the Court agrees with the foregoing conclusion that Plaintiff is entitled to remand to address not only the ALJ's inaccurate PFT description but also the ALJ's seemingly mistaken interpretation of the May 2023 neurological examination as to range of motion in the extremities, either of which could result in a change to the RFC assessment, then the Court need not address Plaintiff's Step 4 argument at this time.  Instead, the Court should direct the Commissioner to revisit the RFC on remand and, based on the resulting RFC, reassess the Step 4 conclusion accordingly.

### D.   Conclusion

For the reasons stated above, it is **RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion for summary judgment (ECF No. 10),

**DENY IN PART** Defendant's motion for summary judgment (ECF No. 12), and

**REMAND** this matter to the Commissioner for action consistent with this report

and recommendation.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d

390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated:  February 16, 2026

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE